The Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. God save the United States in this honorable court. Good afternoon gentlemen, Judge Richardson, Judge ready to hear from you, Mr. Williams. Thank you, Your Honor. May it please the court, Ed Williams for the West Point School Board defendants. I'd like to revert to three minutes for rebuttal. You can. Thank you, Your Honor. There are four independent and authoritative paths for this court to conclude that the district court have removal jurisdiction. Two of those are under 28 U.S.C. section 1443-2 and two of them are under 28 U.S.C. section 1441. Only the two paths under 28 U.S.C. section 1443-2 are currently available for review by this panel pending the outcome of the Supreme Court's decision in BP versus Mayor and City Council of Baltimore. However, because the decision in that case is imminent, we'd like to discuss those grounds for removal today as well. The court is amenable. With respect to section 1443-2, Congress has provided a federal forum to a subset of cases like this one where federal civil rights laws are issued and we submit that the most straightforward path to finding removal jurisdiction proper here is under the refusal clause of section 1443-2. That clause provides the basis for jurisdiction where a defendant has refused to do any act on the ground that it would be inconsistent with a law providing for equal rights. The district court erred by concluding that Title IX is not a law providing for equal rights and did not reach the rest of the Title IX is a law providing for equal rights as cognized under section 1443-2. If for no other reason to begin, because the plain language of the statute informs us first that Title IX is a law as opposed to a constitutional provision which was in Rachel the Supreme Court decided was not a permissible law under section 1443-2 and it provides for equal rights on the basis of sex. Of course, the district court read the Supreme Court's decision in Rachel as limiting the clause law providing for equal rights solely to laws stated in terms of racial equality. First, we submit that the Supreme Court's recent decision in Vassa interpreting Title VII of the Civil Rights Act informs this court that we must first begin with the text and if the text is clear, we end with the text. Based on the plain language discussion that we just had, we believe that Vassa suggested this court and informs this court that Title IX is a law providing equal rights. We also submit, Your Honors, that Georgia v. Rachel does not foreclose this plain text conclusion. It does not foreclose this conclusion because the issue of whether or not a law that provides for equal rights on the basis of sex could meet section 1443-2's pronouncement was not at issue in Rachel and indeed Title IX of the Civil Rights Act of 1972, educational amendments of 1972, were not even in force at the time that Rachel was decided. Rachel must be understood in its context. In Rachel, a group of sit-in protesters were charged under Georgia law with crimes and they sought to remove the federal court under section 1443-1, which has a very similar law providing for language. It says law providing for equal civil rights, whereas section 1443-2 says law providing for equal rights. We submit that there is no meaningful difference and no court has found a meaningful difference between those two phrases as used in those clauses. But the court then goes on to say what is inbounds and out-of-bounds for that particular clause. What is out-of-bounds was the due process clause and the equal protection clauses of the United States Constitution. Those clauses. Just so that I think I understand the arguments you're making, what's the best case that you have suggesting that we should read Rachel as narrowly as you suggest? Has any circuit court adopted your view that we should read Rachel so narrowly in the sort of subsequent cases as well? Two responses, Your Honor. First, I believe that the Supreme Court and Greenwood, I'm at 825 and Greenwood, actually does offer some reason to narrow Rachel's conclusion. At 825 and Rachel and Greenwood, of course, Your Honor, were decided on the same day in 1966. In that case, the Supreme Court says that a precise definition of this clause on law providing for equal civil rights has not been reached by the court and doesn't need to be reached in Greenwood and suggesting because it was decided on the same day as Rachel that Rachel most certainly could not have been in the way that might be suggested. So I think Greenwood, the Supreme Court itself suggested that Rachel was not the end of the conversation as to what a law providing equal rights could mean. The second response, Your Honor, actually has to do with a corollary. Title VI has been used as a removal provision, has been used as a law providing equal rights under Section 1443.2 for proper removal. In particular, in a case called under Section 1443.2 on the basis of Title VI. I bring up Title VI, Your Honor, because Title IX is a statute that is duplicative of Title VI. I'm now paraphrasing the Supreme Court in canon that Title IX is effectively Title VI except that the words race and sex have been exchanged. And so if that's the case, it would strain credulity, Your Honor, or at least good modes of statutory interpretation. So go back go back again to my to my question. I understand those two points and the rest of it. But is is there any court, I mean preferably a circuit court, but is there any court who has has adopted your reading? I understand you have you have an interesting argument about how we can narrow those cases and read them as maybe something less than the words they use. But is there any court that I can look to that has done that? No, Your Honor. We are not aware of a court that has that has adopted this particular view of racial. But we also submit that this statute has been rarely interpreted since it's been in existence for us since the predecessor statute came to existence in 1866. So it's not surprising that there's no statute even since 1966 or case since 1966 that has adopted this particular analysis. And we think that the that if you look at Bridgeport Education Association, which is a District of Connecticut case, which I think does the most thorough discussion of the refusal clause that we found in case law, that that case actually goes through and talks about the fact that the refusal clause should be read as not as broadly as possible, but should be read as on its own language, which is consistent with Justice Gorsuch's opinion in Bostock. Mr. Williams, Mr. Williams, let me ask you this. With regard to section 1443-2, what state law did you refuse to enforce by firing the appellee? So Mr. Blaming submits on his complaint that several Virginia constitutional provisions and Virginia statutory provisions required the West Point School Board to accommodate his misgendering or discrimination of the transgender student. Of course, we disagree with his interpretation of Virginia constitutional and statutory law, but on the basis of his complaint, on the basis of his complaint, Your Honor, we submit that Mr. Blaming contends that those statutes and constitutional provisions required something that the that the district that the West Point School Board district refused to do. In fact, Your Honor, if you look at Mr. Blaming's complaint, just above the heading for paragraph 65, he states and he labels entire section of his complaint as defendants refuse any reasonable accommodation. And so he himself acknowledges that the West Point School Board has refused to take action or take an act that he has asked us, the West Point School Board, to take because the school board believes it is inconsistent with Title IX and its obligations under Title IX to ensure that the... Go back to go back for a second, Mr. Williams, if you would, because I appreciate Judge Floyd's question. You say sort of generically, you know, state constitution and laws, what what's the one that you think is closest as far as an argument? I'm not saying you're adopting it. What is the argument, what is the best state law that the So, two responses. First, to directly answer your question, Judge Richardson, I think the clearest would probably be the Virginia version of the riffraff. I think it's probably the what Mr. Blaming would most strongly contend was violated here. So we would counter that that is what the school board has to the extent that it can carry that the interpretation that Mr. Blaming suggests, which again, we don't adopt. So tell me, so then tell me, so take the Virginia version of riffraff. Tell me on what authority the school board is charged with enforcing riffraff, the Virginia version of riffraff. What is the authority for your enforcement of that statute? Again, I believe that Mr. Blaming contends that we are charged by, to abide by it, by granting reasonable accommodations to him. In this case, allowing him to discriminate against John Doe's student here by refusing to use pronouns for that particular student while using those pronouns as the other student. Although, is there, is there, and I just want to make sure I understand your argument. From your perspective, are you required to comply with, so for example, you know, if your school board member gets drunk and drives, right, so he has to comply with the DUI laws, but we wouldn't naturally say that the school board is enforcing the DUI laws, right? Compliance and enforcement are different. Help me understand why compliance is sufficient here. That's right, your honor, and I would not contend that we are, the DUI law is required to comply with, and I actually want to zoom back out for just a moment, your honor, to respond to your question more fully, and to the text of section 14.42, which does not read the enforcement language that Judge Floyd and Judge Richardson that you're discussing. I believe what you're discussing comes from this court's decision in Baines, which was just before the Supreme Court's decision in Rachel. Of course, Baines and the discussion of the enforcement or state officers' enforcement of discriminatory law comes from a legislature who, in 1866, who won the House floor, included this refusal language and said it would be used for this purpose. Again, I believe the Bridgeport Education Association case in the District of Connecticut is helpful because what that case does or says is that what the legislator was suggesting is that a refusal to enforce a discriminatory state law is kind of at the center or at the core way in which section 14.43.2 refusal clause might be used. But the refusal clause itself says any act that is done or that is refused to be done. So, Mr. Williams, let me ask you a question. The school board, as we figure out, is not the best place for us to look in terms of what the school board was basing its decision on, the letter that it wrote to Mr. Vlaming and explaining why it was terminating. And in that letter, if I recall, I think the only things that the school board said it was basing its decision on was its own policies. I don't think there was any reference to federal law in there. Why didn't when, you know, you had the chance, your client had the chance to explain the basis of its decision and it did so based on its internal policies, why wouldn't we limit our focus to that? Again, two responses. First, I believe that the letter cites the policy and the policies cite directly to we have incorporated Title IX into that letter by citing those policies. But I think a more direct response to you, Your Honor, is that it's a look at what the Supreme Court did on Rachel and Greenwood. And Rachel and Greenwood, it was the notice of removal, not some prior, you know, documents attendant thereto that provided the basis for removal. And I think that that makes sense, Your Honor, in that the notice of removal here that the West Point School Board filed in the district court laid out what it is that the school board refused to do, which is to accommodate Mr. Blaming, to allow him to continue to teach French at West Point High School if he was going to continue to discriminate against a transgender student. And so we believe that it's the notice of removal that controls whether or not Section 1443-2 applies, not necessarily the documents attendant to the complaint. Of course, those are  those policies to his complaint. And those policies, Your Honor, directly cite to Title IX in, I believe, the legal support section of each of those policies attached to his complaint. Mr. Williams, let me ask you a follow up to my other question. What federal guidance was the school board acting under beyond the guidance of Title IX itself in firing Blaming? So, Your Honor, the school board, like any other public entity subject to Title IX, is required to make decisions that it believes are consistent with both laws. In this court's decision in Grimm, Your Honor, this court made very clear that Title IX precludes discrimination on the basis of gender identity, specifically with respect to transgender students. And the Grimm case had been percolating since well before Mr. Blaming was terminated. And so the school board, like any prudent educational institution, was watching the educational landscape and believed, based on the way that case was being decided, although it bounced up and down a few times, the way that case was being decided, that determination on the basis of gender identity against a transgender student qualified as discrimination on the basis of sex and therefore that Mr. Blaming's discrimination against John Doe here qualified as discrimination under Title IX and therefore needed to be remedied. And the school board chose to remedy that by terminating, first by giving him the opportunity to comply, and then when he refused to comply, by terminating him for that act. So the answer to the question is you relied solely on guidance from Title IX? Yes, Your Honor, that the school board relied on its policies which are promulgated as an effectuation of Title IX, of course, and other statutes, but gave the basis here. And that is why it's cited in the policy. That's why those policies are cited in the termination letter. Your Honor, if it would be useful, I could spend a few moments talking about the color of authority section or switch to the federal question jurisdiction, but I want to make sure I use my brief time as usefully for the court as possible. If the court submitted why it spent 10 seconds talking about the color of authority provision, which allows not only for removal under 14.32 for federal agents, that's ACOP, but also for our federal officers, but also for their agents. So those who assist in that effort. I see my time has expired. If there are no questions... Yes, you have some time, and we're both... Judges, any of you have any questions? No. All right. Mr. Langhoffer, you may proceed. Good afternoon, Your Honor. Good afternoon, Your Honors. Tyson Langhoffer on behalf of Appellee Peter Vlaming. May it please the court. Mr. Vlaming filed his complaint in Virginia state court, alleging claims exclusively under Virginia law. So defendants attempt to shoehorn this case into the very narrow exception created by 28 USC 1443 subsection two, but as the district court correctly held, defendants do not meet the statute's strict requirements. First, Title IX is not a law providing for racial equality. And as Judge Richardson noted, no court has ever interpreted section 1443 to cover Title IX. Second, defendants are not federal officers or agents and did not act under color of authority of federal... Mr. Langhoffer, to your point, I mean, I think that's right. Does Rachel compel us to interpret 1443-2 to racial discrimination or racial matters? Well, given that... I know there's not a case that says that, but the question is, we got a text that's broader, we got a case that refers to racial matters. Does Rachel compel that? Is that your position? I don't think it compels it, Your Honor, because it was on subsection one, but it does frame the reference and everything from Rachel, every court since then has limited 1443, both subsection one and two, to only racial claims. And the only circuit court to have addressed it, the sixth circuit in actually specifically held that subsection two, like in Rachel, is limited to racial equality. And so I think if this court ruled otherwise, it would create a circuit split and it would be contrary to every other district court that has addressed this and every other district court has limited it solely to laws governing racial equality. And because of that, we think, and then you look at the historical context that Rachel laid out and then Greenwood laid out, we think that the analysis applied to subsection one in Rachel also applies to subsection two and that all of the courts that have applied it since then have gotten it right. And so because of that, the district court was correct and should be affirmed on its ruling that 1443 subsection two only applies to laws governing racial equality. But even without that, the defendants failed to meet the other requirements, very strict requirements of 1443, specifically the requirement of the first subsection, which provides that that this was designed as a safe haven, a federal court safe haven for state officers that are acting as federal agents charged under state law for assisting federal officers enforcing federal anti-segregation law. Do you think, just so I understand where we are and I understand the higher decisions in Wilson and Delavine, I may be mispronouncing that. Do you think, Red, in light of Rachel, that those cases dictate that we find 1443.2 is limited to racial equality? I think that is accurate, given, again, given all of the, when you look at the whole body of law governing these cases, it is limited and in fact, every one of the cases cited by the defendants are all governing, are all dealing with title six cases, they're all racial equality cases, and they all deal with desegregation. You look at Bollender, Burns and Linker, those are all racial discrimination cases. And so we think that Rachel, combined with all of the subsequent decisions, including the Sixth Circuit, does support the decision that this is limited solely to laws governing racial equality. But either side would advocate. Mr. Lanehofer, let me ask you, I guess I'm asking you to speculate, why did the Supreme Court apparently abandon the quote racial language in the opinion of Chapman being Houston welfare rights? Your Honor, I can't speculate as to that. I don't know the answer, but what I do know is that, you know, when you look at the analysis that both Rachel and Greenwood engaged in, they specifically looked at the historical context and indicated that they believe that the intent was limited to racial equality. And I don't know why they specifically abandoned that there. But I think that given the history, the development since then over the over 50 years, since those decisions have been handed down and every court that has addressed this has limited it to racial, to laws of racial equality. I think it demonstrates that the, that they all understood it to be limited in that way. And again, you know, I think it would create a circuit split with the Sixth Circuit if it was ruled otherwise here. But I think if even, you know, just as importantly that if they're going to qualify under this, these clauses, they have to meet one of the, either the first or the second clause and defendants cannot meet that as the Greenwood court was very, very specific as to the first clause, they indicated that you have to be a federal officer and, or a person assisting such officer in the performance of their official duties, and then the Greenwood court goes on to explain and give some examples. And the examples they give are a, just a regular individual who is specifically authorized as a U.S. commissioner to execute a warrant, to enforce a racial segregation law. Or to enforce a racial equality law. And so in that case, they're specifically saying, look, you have to be authorized as a federal officer or an agent to execute specific actions. And I think, again, all of the cases cited by defendants support that ruling because Bolander, Burns and Linker, they all involved racial discrimination and every one of them involved a district court that specifically ordered a specific school board to take specific action. Or- So go ahead and finish your sentence. I'm sorry. I'll ask it after that. I was just going to say, or a federal agency. Every one of those cases dealt with a district, a federal district court giving an order or a federal agency giving an order. Assume for the sake of discussion, just to go to the other elements besides what equal rights means that, you know, the defendants get past that hurdle. And I'm not suggesting outcome there. I'm just want to explore some of the other issues. Why is it refusing to accommodate your client's request for, you know, religious freedom grounds under Virginia law? Why isn't that the refusal to do an act on the ground that would be inconsistent with, with a law providing for equal rights? Because the, every one of the causes of action, your honor, are based upon the termination, the defendant's affirmative act to terminate. If, if they wouldn't have terminated, then he wouldn't have sued. This is a wrongful termination case. And every one of the claims deal with the damages and the remedies that come from the termination. But isn't that a bit of a chicken or the egg? I mean, if you would have accommodated, I mean, if it would have accommodated, it wouldn't have had, it wouldn't have terminated. So, I mean, those seem pretty intertwined to me. So your honor, I think that the common cause case is an interesting one here. And so the common cause of the Eastern district, North Carolina, North Carolina legislators were, they enacted a redistricting law and then they were sued in North Carolina state court to stop the enforcement of that. And, and the, they removed it under 1443 subsection two refusal and the district court denied that. And they said, look, you're not refusing to act because what the plaintiffs there were wanting, they were wanting them to not enforce that law. And, and, and that that's what North Carolina said. And the court said, no, you were sued because you enacted that law. And, and that's, that's exactly what's happened here. They, they enforced this policy by terminating Mr. Blamey and that then triggered the, the lawsuit. And so I think that route reading that the district, Eastern district, North Carolina is consistent with, with what we're at, we're saying here is that he wouldn't have had a contract, a breach of contract claim had he not been terminated, he wouldn't have had a Dillon rule claim had he not been terminated. And so the second clause does not apply. Why did you have us, so just help me understand, this is a difficult question. How do we draw that line? Because obviously the district court's opinion was not the rationale given in the fourth circuit. But how do we draw that line? Because many, maybe not every, but many refusal to acts can be recast, if you would, as actions, right there, you know, terminate or accommodate, or in many ways, two sides of the same coin, is it solely limited in your view to the manner in which the plaintiff pled his claim? It doesn't seem consistent with the way we think about removal generally. No, your honor, it's not. But I think when you look at the context of the statute, I think our reading is appropriate. And the context is that it's to provide a federal venue for a state official who doesn't want to enforce a state law that they believe is contrary to federal law. Right? Well, in this case, that's not even the situation. The defendants are actually arguing that Virginia Human Rights Act also compels them to act exactly like the Title IX Act. There is no conflict there. They're acting pursuant to the Virginia law as well. That's what they're arguing in the state court at this time. And so when you're talking, when you're looking at a refusal to act, they didn't refuse to enforce any state law. In fact, they say that they were compelled by state law to do that. And that's exactly. The flip side of that, right, is that they refused. So the argument goes that they refused to enforce RFRA, the Virginia RFRA. And the reason they refused to enforce the Virginia RFRA was because it violated Title IX or some version. That's a shorthand version of that argument. So help me understand why we wouldn't think of that as a refusal to enforce the Virginia RFRA. So if you think about this, when the accommodation came up, the accommodation request from Mr. Blanding only came up when they enforced the policy against him, that enforcement. The accommodation request, because he was acting as he had always done. He was referring to students as he always has. And then they enforced the policy. That's when the request came up and they said, we're going to terminate you. And that, so that's the action. And the refusal clause, again, is when they refuse to enforce a state law, which they indicate is contrary to federal law. And that's, that's really not even applicable here, but every one of Mr. Blanding's actions, every one of the causes of actions, all nine of them are based upon the damages that he suffered from the termination themselves. And there wouldn't have been a... One other issue, just kind of, at least from my standpoint, rounding out the elements of the second part of subsection two, do you dispute that the school board are state officials? I don't, I think that, that, that they would be considered state officials pursuant, if they, consistent that they were enforcing a state law, correct? Yes. I don't dispute that. Okay. But, but, but I think... Just to make sure I understand that, what you're saying is that they, they are state officials and they could be enforcing, if they were enforcing a state law, they would be state officials. But to the extent they're not, then, then that, so the, the difference for you is whether they're enforcing a state law or not. I think that's accurate, your honor. Because, because again, I think what, in order to qualify, essentially they have to say they refused to enforce a state, you know, a, a state law, and, and they don't, that, that's not the claims here. The claims that, that they're trying to remove are, are the act of terminating. And, and, and again, the other issue, the other issue you have to recognize here is that this is a municipality. And so they are, they can only act if state law gives them the right to act. That, that's the Dillon rule of claim. They can't act otherwise. So I, I think that...  Langhoff, Mr. Langhoff, let me ask you, tell me what you think the distinction between enforcement and compliance is. Well, I think a compliance would be there, there's a, there's a law that, that everybody is, is, is required to abide by. But there is, but enforcement would be the specific branching of some governmental official to maybe another governmental official to actually enforce the policy itself. And I think that when you look at the language that Greenwood used, it's very specific, it says it has to be a federal officer or that agent authorized to, to enforce a specific act. And then again, when you look at every case that, that they cite, Bowlander, Burns, and Linker, they're all, every one of the school boards were specifically acting at the order of a court or a federal agency. And, and so that's the distinction that I think is really key here is that the first clause is very limited under Greenwood to federal officers or agents acting at the specific direction, or I'm sorry, if you're not a federal officer, you have to be an agent acting at the direction of a federal officer, like a district court or a federal agency. And I think as the, as my friend on the other side indicated, they were, they, they were essentially, there was no specific, you know, direction given. They were just kind of interpreting what they thought Title IX was and acting accordingly. And, and that's, that's not sufficient under Greenwood or our Supreme Court's jurisprudence. And, and I, so again, when you look at all of the case law, we have that, that their claims are prohibited under the fact that 1443 is limited to laws governing racial equality. You also have the fact that they are not federal officers or agents under federal law. I'm sorry, under the first clause of section 1443. And further, they, they did not refuse to take any act and thus they don't qualify under the second clause of 1443. And what we're dealing with here, you know, really is a, a completely state law action and the district court properly ruled that section 1443 does not confer jurisdiction in that situation. No court has ever allowed removal outside the race context and ruling otherwise here would create a circuit split. Since the defendants are not the federal officers under the first clause and they didn't refuse to act as required by the second clause, you know, they do not qualify under section 1443 and as my friend on the other side indicated, under 1441, this court does not have jurisdiction to review that. So what the defendants are really asking this court to do is to hold that the proper venue to decide, you know, these, these purely state law claims. And if you think about it if you took their reading, it would really open up the floodgate for every case in which a state constitution looked to federal constitutions for rulings or in even state employment law claims, where somebody claims that they're required by title seven to take this action. Under their theory, they can remove those purely state employment law claims to federal court. That's not the proper reading of 1443. It's not consistent with the Supreme Court's ruling or any of the subsequent rulings from any of the other courts. These are quintessential state law claims. Mr. Blamey brought only state law claims and the defendants do not qualify under section 1443. So we respectfully ask that this court to affirm the district court. Thank you, sir. Mr. Williams, you have some rebuttal time. Yes, Your Honor. Thank you. We must begin by accepting that we must give effect to Congress's announcements. Of course, in 1866, when the Civil Rights Act predecessor to section 1443.2 was drafted, Congress could not have intended that in 1875, necessarily that language would be extended, that in 1966, the Supreme Court would then adopt a limiting principle that was not a part of the text. And then that rule would bar this suit from coming to federal court in protection of a transgender student's rights under the federal Title IX Act. My friend on the other side has conceded to this court that Rachel does not compel the outcome as with respect to the equal, reading the law under equal rights as limiting itself solely to race. And I'd like to address on the refusal clause from the common cause cases, which are the most recent discussions of the refusal clause. The West Point school board was first in the fourth circuit. So the reason that the legislative defendants did not qualify for the refusal clause, because this court reasoned that they did not have enforcement authority. Of course, in a footnote in common cause, this court acknowledges that school boards are the type of quasi legislative entities that also have enforcement authority and so therefore would not be barred. Listen to that. So, but to go back to your, to your point and to return to the idea about enforcement, your response to Judge Floyd and my question about enforcement was to say, well, it just says act. And so we don't need to look to enforcement, but common cause seems to tell us pretty strongly that, that act is limited to enforcement and that's the basis of the common cause ruling. I understand they're different entities, but the whole thing there is that they lack enforcement and without enforcement, they couldn't be under trial too. That's right, Your Honor. But, but the school board does under, does act under Title IX. And it takes actions under, that are consistent with, and that are obligated by Title IX to rid itself as educational programs of discrimination on the basis of sex, that is the command of Title IX. Can I follow up on that? So in the, in the related 1442 removal, the Supreme Court in Watson draws a And, and there says even highly regulated, very supervised areas like tobacco, merely acting in compliance with is not sufficient. Why, why doesn't that case sort of dictate this, you know, compliance acting to enforce distinction? I think that the historical record around section 1442 was a formative. And I may take a few minutes past my time, Your Honor, if you don't mind. So the Freedmen's Borough are, and federal officers under Freedmen's Borough were the first federal officers contemplated for use under the predecessor of section 1443-2. This court says in Baines, and also the Supreme Court says in the city of Greenwood, that this, that the progenitors of section 1443-2 anticipated that thousands of people, not just the federal officers, not just the with the Freedmen's Borough Act at the time, 1865, would be, would be asked, will be able to bring removal or remove their case to federal court. And so this is, this is the type of cooperative relationship between the Supreme Court and the Department of Education Office of Civil Rights that are, that are similar to the type of relationship between the Freedmen's Borough and its, you know, second, third level down officials or enforcers, people who would take actions consistent with their pronouncements. The Department of Education Office of Civil Rights could, if John Doe here had filed a complaint with the Department of Education Office of Civil Rights, compelled the West Point School Board to take an action. And the school board did not have to wait, Your Honor, we submit, for that to occur, in order to take action consistent with Title IX. Your Honor, we're, we're out of time, but we would submit to this court that the district court got it, got it wrong on the question of removal of jurisdiction. One, because 1443-2's plain text compels a different outcome. And because, Your Honor, Rachel is not conclusory on the question of what is a law providing people rights. Thank you so much for your time. All right. Thank you, gentlemen. As you know, this is being done virtually. Ordinarily, if we were in Richmond, we'd come down and shake your hand and tell you what a good job you did. But let me just say, you both did a really good job in a very interesting case. And so, take a virtual handshake with, from us. Thank you very much.
judges: Henry F. Floyd, Julius N. Richardson, A. Marvin Quattlebaum Jr.